**NOT FOR PUBLICATION**                                              **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASPREET BASRA, | Civil No.: 09-4264 (JLL) |
| Petitioner, | |
| v. | **OPINION** |
| JANET NAPOLITANO, et al., | |
| Respondents. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Jaspreet Basra's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). Petitioner claims that she is being unlawfully held in custody as a result of an erroneous interpretation of the mandatory detention provision contained in § 236(c) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226(c) and INA § 235(b)(2)(A), codified at 8 U.S.C. § 1225(b)(2)(A). Respondents, however, contend that Petitioner is not being detained under § 1226(c), but rather is being lawfully detained under § 1225(b)(2)(A). Based on the reasons that follow, the instant Petition for a writ of habeas corpus is **DENIED**.

## BACKGROUND

The material facts are not disputed. Unless specifically referenced, all facts herein are taken from the parties' papers and supporting documentation. Petitioner became a Lawful Permanent Resident ("LPR") of the United States in February 1996. In May 2002, Petitioner was arrested. On or about April 25, 2003, Petitioner plead guilty to conspiracy to commit bank fraud, mail fraud, and wire fraud, in violation of 18 U.S.C. § 371; bank fraud, in violation of 18 U.S.C. §§ 1344 and 1342; and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Petitioner remained in custody until October 20, 2003 when she was released after a plea deal. Following her release Petitioner assisted both the United States government and United Kingdom

1

in parallel investigations. As part of her cooperation, Petitioner flew to London twice in the Fall of 2007 to testify at the British trial. When returning from her first trip, Petitioner was admitted as a permanent resident. However, when returning from her second trip, Petitioner was charged as an arriving alien, given deferred inspection, and ordered to report each month to an Immigration and Customs official, which she did for the next sixteen months. On October 27, 2008, Petitioner was sentenced for her above referenced crimes.[1] On February 25, 2009, upon reporting for her monthly inspection, Petitioner was immediately taken into custody, placed in removal proceedings, and served with an I-862 Notice to Appear which described her as an alien seeking admission pursuant to INA § 212(a)(2)(A)(i)(I), codified at 8 U.S.C. § 1182(a)(2)(A)(i)(I). Petitioner is currently incarcerated at the Hudson County Correctional Center.

## DISCUSSION

### A. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 2241 to determine whether Petitioner's pre-removal detention is constitutionally permissible, but may not disturb those decisions made in the discretion of executive officials. Bakhtriger v. Elwood, 360 F.3d 414, 420 (3d Cir.2004) ("the scope of review under section 2241 must be confined to questions of constitutional and statutory law").

### B. Petitioner is detained properly under 8 U.S.C. § 1225(b)(2)(A).

Petitioner is detained properly under 8 U.S.C. § 1225(b)(2)(A). The Court's analysis involves the interplay between 8 U.S.C. §§ 1101(a)(13)(C)(v), 1182(a)(2), 1182(d)(5)(A), and 1225(b)(2)(A).

Section 1101(a)(13)(C)(v) provides, in relevant part:

> (A) The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.
>
> * * * * * *
>
> (C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the

---

[1] Petitioner was sentenced to time served, five years of supervised release, a $300 special assessment, and pro rata pavements of $150 per month as towards her total restitution of $683,632,800.23.

2

immigration laws unless the alien- . . . (v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title,

8 U.S.C. § 1101(a)(13). Under § 1101(a)(13)(C), as a returning LPR, Petitioner was presumptively entitled to retain that status upon reentry unless she fell into one of the six subsections. Tineo v. Ashcroft, 350 F.3d 382, 386 (3d Cir. 2003). Here, as a LPR who plead guilty to various crimes in 2003, Petitioner fell into the fifth category.[2] Accordingly, she was "stripped of h[er] lawful permanent residence" and "[became] an alien seeking admission as if [s]he were entering for the first time." Id.

At that point, however, "after making contact with government officials in New York with whom she had been cooperating" Petitioner's "inspection was deferred and/or she was paroled into the country with instructions to report to ICE [U.S. Immigration and Customs Enforcement] after she had been formally sentenced on her criminal charges." (Respondent's Br. 8; See also Minichiello Decl. Exh. A at 51). The Court finds that this is consistent with the limited exception under 8 U.S.C. § 1182(d)(5)(A) which provides that,

> The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). In compliance with the conditions of her parole, after Petitioner was sentenced she reported to ICE officials at Newark Liberty Airport and her immigration case "continue[d] to be dealt with in the same manner as that of any other applicant for admission to the United States." Id. That is to say, Petitioner, as an alien who is an applicant for admission, was detained under 8 § 1225(b)(2)(A), which provides:

---

[2] See Petition at ¶ 14 (Petitioner plead guilty to conspiracy to commit bank fraud, mail fraud, and wire fraud, in violation of 18 U.S.C. § 371; bank fraud, in violation of 18 U.S.C. §§ 1344 and 1342; and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h)). See also Decl. of Jane Minichiello at p. 49 (U.S. Customs and Border Protection form I-831 charging Petitioner under § 212(a)(2)(A)(i)(I),codified at 8 U.S.C. § 1182(a)(2)).

> Subject to subparagraphs (B) and (C), in the case of *an alien who is an applicant for admission*, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding under section 1229a of this title.

Id. (emphasis added). Although § 1225(b)(2)(A) provides certain exceptions, none of them apply to Petitioner. Therefore, as an alien who is an applicant for admission and not subject to any exceptions, Petitioner is properly detained under § 1225(b)(2)(A).

### C. Petitioner's Due Process Challenge.

Petitioner argues that her detention under § 1225(b)(2)(A) constitutes a violation of due process because she was not given notice that she would lose her LPR status when seeking reentry into the United States. Each of the cases cited by Petitioner concern Due Process challenges by an alien traveling abroad on "advance parole."[3] These cases stand for the rule if an alien receives "advance parole" and the government fails to provide sufficient notice of the consequences of accepting "advance parole" vis-à-vis her immigration status, then tthe government cannot deprive her of the rights that would have otherwise been available to her prior to leaving the country. See Martinez-De Bojorquez, 365 F.3d 800, 803 (9th Cir. 2004) (finding that the failure to inform an alien of the consequences of traveling on advance parole was a deprivation of due process). This rule, however, is limited to cases involving "advance parole." Petitioner did not apply for advance parole and the Court declines to extend this rule to include the particular facts of Petitioner's case.

Moreover, even assuming arguendo that Petitioner was entitled to notice, the Court finds that Petitioner received adequate notice at her plea hearing. (See Decl. of James B. Clark, Exh. A, p. 17 ("COURT: Do you understand that because you are a citizen of another country that you may be subject to deportation also as a result of this conviction? DEFENDANT: Yes, sir."). Plaintiff unequivocally acknowledged that she understood that her plea could affect her immigration status. In other words, Petitioner accepted the burden of navigating the immigration system and cannot now claim inadequate notice.

---

[3] Advance parole is offered on a discretionary basis by the Attorney General to an otherwise excludable and deportable alien so that the alien may return to the United States after an approved trip abroad. 8 U.S.C. § 1182(d)(5).

4

### D. Petitioner's challenge to detention under 8 U.S.C. § 1226(c).

Petitioner claims that she is being unlawfully detained under 8 U.S.C. § 1226(c). The Court need not address this argument, as Petitioner is being detained properly under § 1225(b)(2)(A), not § 1226(c).

### CONCLUSION

Based on the reasons set forth above, the instant Petition for a writ of habeas corpus is **DENIED**.

/s/ Jose L. Linares<br>
United States District Judge

DATED: March 17, 2010

5